UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Bonita Ann Leek, | Case No. 2:23-cv-00095-APG-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| Smith's Food & Drug Centers, Inc., | |
| Defendant. | |

Plaintiff Bonita Leek sued Smith's Food & Drug Centers ("Smith's") after she allegedly slipped and fell while shopping for Thanksgiving dinner. After discovering that Smith's replaced the flooring in the storefront where she fell, Ms. Leek brought the present motion to strike Smith's answer, in which she argues that Smith's spoliated evidence. However, Ms. Leek's expert was able to test the same type of flooring that was replaced, as the flooring still existed in the employee breakroom. Therefore, because Ms. Leek has suffered, at most, minimal prejudice from Smith's replacing the flooring, the Court denies Ms. Leek's motion.

**I.   BACKGROUND**

On Wednesday, November 25, 2020, Ms. Leek and her daughter visited their local Smith's grocery store to pick up items for Thanksgiving dinner the next day. ECF No. 24 at 3. Ms. Leek and her daughter entered the front of the store and made their way to the canned-goods aisle. ECF No. 24-1 at 15:7–15. Before Ms. Leek entered this aisle, she noticed that the floor in the main aisle was "very, very shiny, very smooth." *Id.* at 15:24–25, 20:1–2. She proceeded to turn into the canned-goods aisle and grab the items she needed. *Id.* at 19:1–22:2. Soon after she placed the last can in her arms, she fell. *Id.* at 23:1–7. An ambulance took Ms. Leek to the hospital, where a doctor determined that she had fractured her right shoulder and right elbow. *Id.* at 31:13–32:2.

On February 18, 2021, less than two months after Ms. Leek fell, her counsel sent a letter to Smith's, in which they advised Smith's of its legal obligation to preserve any potentially

relevant evidence, including physical evidence, related to the incident that could be used in future litigation. ECF No. 24-2 at 1. Ms. Leek received a response that confirmed receipt of the letter four days later. ECF No. 24-3. She filed her complaint in October of 2022, and discovery began in early 2023. ECF No. 1-1 (Complaint); ECF No. 10 (Scheduling Order).

As part of her discovery requests, Ms. Leek served requests for production related to the flooring that was in place during the incident. ECF No. 24 at 5–6. Smith's counsel responded, along with a letter dated November 29, 2023, in which they proposed that the parties work to schedule a site inspection. ECF No. 24-5. In late December of 2023, counsel for Ms. Leek received a site-inspector report that informed them that Smith's replaced the store's flooring. ECF No. 24-6 at 2. Smith's 30(b)(6) witness confirmed as much in his deposition:

> Q: The flooring at the time of the incident in Aisle 18 no longer exists, right?
> A: Correct.
> Q: It's not in Smith's possession?
> A: Correct.
> [Counsel objection]
> Q: At the time of the incident, there was VCT tile in that Aisle 18?
> A: Yes.
> Q: That VCT tile was removed when the polished concrete went in?
> A: Yes.
> Q: That VCT tile that was in that aisle Smith's doesn't have possession of?
> A: Correct.
> Q: Do you know why the transition was made from VCT to concrete?
> A: Maintenance.
> Q: Less maintenance?
> A: Yes.
> Q: Any other reasons?
> A: No. Looks better.
> Q: It would have been feasible for Smith's to retain a portion of that VCT tile in that aisle, right?
> [Counsel objection]
> A: I don't think it would be feasible, no.
> Q: It wouldn't have been possible to keep a small section of that tile?
> [Counsel objection]
> A: No, because we have it in the offices still.
> . . .
> Q: The tile that's in the break room, that's the same tile – I don't want to misstate your testimony. That's the same tile that was in Aisle 18?
> A: Yes. As far as I know. It looks just the same.
> . . .
> Q: But other than it looking the same, does Smith's have a different basis for why it's the same tile?
> A: As far as I'm – for me, it's the same tile we always had, so . . .
> Q: But it's not from that portion of the aisle, fair?
> A: Correct.

1  ECF No. 24-8 at 88:24–92:3. The 30(b)(6) witness also testified that the store replaced the VCT

2  tile with polished concrete around June of 2022. *Id.* at 86:1–18. Therefore, Smith's replaced the

3  tile more than a year after it received Ms. Leek's preservation-of-evidence letter. ECF No. 24-3.

4  **II.   DISCUSSION**

5  "Spoliation is the destruction or significant alteration of evidence, or the failure to

6  preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

7  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). If a court finds

8  spoliation, it has two sources of authority under which it may sanction a party: its inherent

9  authority and Federal Rule of Civil Procedure 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th

10 Cir. 2006). Sanctions may include dismissal, excluding the spoliated evidence, or giving an

11 adverse-inference jury instruction. *Zeiter v. Walmart Inc.*, No. 2:21-cv-00061-APG-DJA, 2024

12 WL 3028259, at *10 (D. Nev. June 17, 2024); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329

13 (9th Cir. 1993). Regardless of the source of authority, federal courts apply federal law when

14 addressing issues of spoliation of evidence. *Glover*, 6 F.3d at 1329 (applying federal law to issue

15 of spoliation in diversity case).

16 Here, as an initial matter, the Court relies on its inherent authority because neither party

17 argues that Smith's conduct violated a discovery order under Rule 37. *See West*, 167 F.3d at 779

18 ("A federal district court may impose sanctions under [Rule] 37(b) when a party spoliates

19 evidence in violation of a court order."). Additionally, it is undisputed that the precise area of the

20 floor on which Ms. Leek fell was destroyed. ECF No. 24-8 at 88:24–89:3. However, the "bare

21 fact that evidence has been altered or destroyed 'does not necessarily mean that the party has

22 engaged in sanction-worthy spoliation.'" *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 799–

23 800 (N.D. Tex. 2011).

24 In considering what spoliation sanction to impose, if any, courts generally consider three

25 factors: "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree

26 of prejudice suffered by the [non-spoiling] party; and (3) whether there is a lesser sanction that

27 will avoid substantial unfairness to the [non-spoiling] party.'" *Apple Inc. v. Samsung Electronics*

28 *Co. Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012) (quoting *Schmid v. Milwaukee Elec. Tool*

*Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *see also In re Napster*, 462 F.Supp.2d 1060, 1066–67 (N.D. Cal. 2006). Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid*, 13 F.3d at 79.

### A. Degree of Fault

Before imposing the sanction of dismissal, the "conduct to be sanctioned must be due to willfulness, fault or bad faith." *Anheuser-Busch, Inc. v. Natural Beverage Dists.*, 69 F.3d 337, 348 (9th Cir. 1995) (citing *Henry v. Gill Industs., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)). This requirement comes from the court's inherent authority "to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* "Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate for evidence destruction." *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 800 (N.D. Tex. 2011) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529–31 (D. Maryland 2010)). However, the Ninth Circuit has found that a party willfully spoliates evidence if it destroys evidence despite having prior notice that such evidence was potentially relevant to litigation. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

Here, Smith's destruction of the floor was willful because it replaced the flooring despite having prior notice of potential litigation. Ms. Leek fell on November of 2020. ECF No. 24 at 3. Smith's replaced the tile where she fell in June of 2022, though it received notice to preserve physical evidence in February of 2021, via Ms. Leek's letter. ECF No. 24-8 at 86:10–18; ECF No. 24-3 (Letter).

Although Smith's destruction of the tile was technically willful, there is no evidence that Smith's acted with the intent to conceal evidence. As Smith's 30(b)(6) witness testified, Smith's replaced the tile with polished concrete because it was easier to maintain. ECF No. 24-8 at 89:16–22. Moreover, Smith's did preserve the same type of flooring from a different area of the store, and it made this flooring available to Ms. Leek's expert for testing. ECF No. 32 at 9.

//

### B. Prejudice

"The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Leon v. IDX Systs. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)). Here, it is not clear that Ms. Leek faces any prejudice. Ms. Leek's counsel did not send the preservation letter until three months after the fall. ECF No. 24 at 3; ECF No. 24-3. So, even if Smith's had preserved the tile on which Ms. Leek allegedly slipped, it would not be in the same condition it was at the time she fell. That is because, by then, the floor would have been travelled on for three months and would have naturally been subject to additional wear and tear.

Thus, even if the floor had been preserved on the same day the preservation letter was received, it would not have been the exact floor Ms. Leek fell on. Moreover, Ms. Leek's expert was able to test the same type of tile[1] that existed in another area of the store to draw conclusions favorable to her case. As Ms. Leek stated in her reply, "Despite [Smith's] efforts to spoliate, [Ms. Leek's] expert found that the areas of flooring that Smith's conjured up as a substitute was still too hazardously slippery." ECF No. 37 at 3.

Ms. Leek further contends that she is prejudiced because, in its motion for summary judgment, Smith's argues that her expert report is unreliable because the substitute flooring is not the same as the original flooring. ECF No. 37 at 6–7 (citing ECF No. 25 at 17:21–22). In the portion of Smith's motion that Ms. Leek refers to, Smith's argues that the expert's opinions "do not capture the exact condition of the floors from the date of the subject incident." ECF No. 25 at 17:22. As the Court discussed in the previous paragraph, Smith's is correct. That is, even if Ms. Leek tested the tile on the day she filed the lawsuit, such tests would not capture the conditions of

---

[1] Ms. Leek questions whether the flooring she tested was the same type of flooring that she fell on. ECF No. 24 at 7 ("[T]here is no way to know that this tile is the same, or even similar, to the type of flooring in the area where Plaintiff fell."). However, throughout its opposition, Smith's argues that the flooring was the same: "Plaintiff was able to test the same flooring," "Plaintiff was able to [] test the flooring of the same type that was present in the subject store at the time of the incident," "[Ms. Leek] was afforded the opportunity for her expert Dr. Presswood's associate [to] test the exact same type of tile that was present in the area where she fell." ECF No. 32 at 9–11. Therefore, to the extent Ms. Leek argues that she is prejudiced because there is no way to know whether the flooring she tested was the same as the flooring she fell on, the Court rejects this argument given Smith's numerous admissions that it was the same type of tile.

the floor on the day she fell. So, Smith's argument could be made even if Ms. Leek had tested the precise tile she fell on.

### C. Availability of Lesser Sanctions

For factor three, courts consider "whether there is a lesser sanction that will avoid substantial unfairness to the [non-spoiling] party." *Apple Inc. v. Samsung Electronics Co. Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). Here, no sanction is needed to avoid substantial unfairness because, as discussed above, Ms. Leek faced little to no prejudice as she was able to test the same type of tile that she fell on. Accordingly, the Court denies Ms. Leek's motion to strike.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's motion to strike (ECF No. 24) is DENIED.

DATED this 6th day of November 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE